1  Alan Himmelfarb (Cal. Bar. No. 90480)
   KAMBEREDELSON, LLC
2  2757 Leonis Blvd.
   Los Angeles, CA 90058
3  (323) 585-8696
   ahimmelfarb@kamberedelson.com
4
5  Jay Edelson
   Ethan Preston
6  KAMBEREDELSON, LLC
   The Monadnock Building
7  53 West Jackson, Suite 550
   Chicago, IL 60604
8  (312) 589-6370

9  Karin E. Fisch
   Orin Kurtz
10 ABBEY SPANIER RODD & ABRAMS, LLP
   212 East 39th Street
11 New York, NY 10016
   (212) 889-3700

12 *Counsel for Plaintiff*

13            **IN THE UNITED STATES DISTRICT COURT**
              **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
14

15 JESSE MEYER, an individual, on his own          No. 08cv655-WQH(LSP)
   behalf and on behalf of all similarly situated,
16                                                  **PLAINTIFF JESSE MEYER'S**
                                                    **MEMORANDUM IN OPPOSITION**
17           Plaintiff,                             **TO DEFENDANT'S MOTION FOR**
                                                    **TRANSFER**
18        v.
                                                    **NO ORAL ARGUMENT REQUESTED**
19 QUALCOMM INCORPORATED, a                         **BY PLAINTIFF**
   Delaware corporation,
20                                                  Date: June 2, 2008
             Defendant.                             Time: 11:00 a.m.
21                                                  Judge William Q. Hayes
                                                    19 940 Front Street
22                                                  Courtroom 4
                                                    San Diego, CA 92101
23

24

25

26

27

28

1

**Table of Contents**

2

Page

3    I.    Introduction ...................................................................................................1

4
5    II.    This District Is the Best Venue for Meyer's Action .................................2

6          A.    Meyer's Choice of Venue in Qualcomm's Home Judicial District Is Entitled to
7                Deference...................................................................................................4

8          B.    Objective Factors Support Venue in the Southern District of California.............5

9
10         C.    Public Factors Favor the Southern District of California...................................6

11         D.    Private Factors Favor the Southern District of California..................................7

12
13   III.   The Court Can Better Address the Overlap with the Broadcom Action Through
            Coordination Rather Than Consolidation .................................................10

14
15         A.    Meyer's Case Involves Distinct Factual and Legal Issues Not Present in the
                 Broadcom Case...........................................................................................11

16
17         B.    Coordination with Broadcom Action Can Eliminate Duplicative Efforts..........13

18         C.    Consolidation for Trial Cannot Provide Any Marginal Benefits Over
19               Coordination Without Delaying the Broadcom Action ....................................14

20   IV.    Conclusion .....................................................................................................15

21

22

23

24

25

26

27

28

**Table of Authorities**

**Federal Cases**                                                                                                            **Page**

*Alexander v. Franklin Resources, Inc.,*
     No. 06-7121, 2007 WL 518859 (N.D. Cal. Feb 14, 2007).................................3 n.1

*Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799 (D.C. Cir. 2001) ....................12

*Antoninetti v. Chipotle Mexican Grill, Inc.,*
     05-1660, 2007 WL 2669531 (S.D. Cal. Sept. 7, 2007) .........................................14

*Atlantic City Elec. Co. v. General Elec. Co.*, 244 F. Supp. 707 (S.D.N.Y. 1965) .....................13 n.4

*Bibo v. Federal Express, Inc.,*
     No. 07-2505, 2007 WL 2972948 (N.D. Cal. Oct. 10, 2007) ...............1, 2, 4 & n.1, 5, 10, 13

*Belluomini v. United States*, No. 93-5448, 1993 WL 427722 (N.D. Ill. Oct. 20, 1993)        13 n.4

*Bomanite Corp. v. Newlook Int'l, Inc.,*
     No. 07-1640, 2008 WL 1767037 (E.D. Cal. Apr. 16, 2008).................................3 n.1

*Carolina Cas. Co. v. Data Broadcasting Corp.*, 158 F. Supp. 2d 1044 (N.D. Cal. 2001) ............6, 8

*Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113 (C.D. Cal. 1998) .........................10

*Commodity Futures Trading Commission v. Savage*, 611 F.2d 270 (9th Cir. 1979).......................4

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183 (S.D. Cal. 2007)...............6

*CoxCom, Inc. v. Hybrid Patents Inc.,*
     No. 06-7918, 2007 WL 2500982 (N.D. Cal. Aug. 30, 2007)...........................3 n.1

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ................6, 8, 12, 15

*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007) ....................12

*Foster v. Nationwide Mut. Ins. Co.,*
     No. 07-4928, 2007 WL 4410408 (N.D. Cal. Dec. 14, 2007)........................6-7, 8

*Gherebi v. Bush*, 352 F.3d 1278 (9th Cir. 2003) ..........................................10

*Italian Colors Rest. v. Am. Express Co.,*
     No. 03-3719, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003)..........................8, 9

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) ...................11 n.2

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) .............................5, 6, 8-9

*Lincoln General Ins. Co. v. Access Claims Adm'rs, Inc.,*
     No. 07-1015, 2007 WL 2492436 (E.D. Cal. Aug. 30, 2007) ..........................7

*London and Hull Maritime Ins. Co. Ltd. v. Eagle Pacific Ins. Co.,*
     No. 96-1512, 1996 WL 479013 (N.D. Cal. Aug. 14, 1996)............................3 n.1

1

**Table of Authorities**

2

**Federal Cases**                                                                                          **Page**

3

*Los Angeles Memorial Coliseum Commission v. National Football League*,
    89 F.R.D. 497 (C.D. Cal. 1981)........................................................................4

4

*Mayfield v. Gonzales*, No. 04-1427, 2005 WL 1801679 (D. Or. July 28, 2005) .......................13 n.4

5

*N.L.R.B. v. A-Plus Roofing, Inc.*, 39 F.3d 1410 (9th Cir. 1994) ..................................13 n.4

6

*Papaleo v. Cingular Wireless Corp.*,
    No. 07-1234, 2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) ...........................3 n.1

7

*Pac. Coast Fed'n v. Gutierrez*,
    No. 05-3232, 2006 WL 194507 (N.D. Cal. Jan. 24, 2006) ...........................3 n.1

8

9

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979) ..............................................15

10

*Parrish v. National Football League Players Inc.*,
    No. 07-943, 2007 WL 1624601 (N.D. Cal. June 4, 2007) ..........................4

11

*Puerto Rican Legal Defense and Educ. Fund, Inc. v. Gantt*,
    796 F. Supp. 681 (E.D.N.Y. 1992)........................................................13 n.4

12

13

*Ray v. BlueHippo Funding, LLC*, No. 06-1807, 2007 WL 4259424 (N.D. Cal. Dec. 4, 2007).........4

14

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979)........................................................12

15

*Royal Queentex Enterprises v. Sara Lee Corp.*,
    No. 99-4787, 2000 WL 246599, 6 (N.D. Cal. Mar. 1, 2000) .........................10

16

*Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005)........................................10

17

*S.E.C. v. Rose Fund, LLC*, No. 03-4593, 2004 WL 2445242 (N.D. Cal. Jan. 9, 2004) ..............9-10

18

*Seafirst Corp. v. Jenkins*, No. 85-0346, 1986 WL 566 (D.D.C. July 18, 1986)..............................13

19

*Single Chip Systems Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052 (S.D. Cal. 2007) ............11

20

*Strigliabotti v. Franklin Res., Inc.*,
    No. 04-0883, 2004 WL 2254556 (N.D. Cal. Oct. 5, 2004).......................2, 4-5, 7

21

22

*United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140 (D. Del. 1999) ..............................15

23

*United States v. Syufy Enterprises*, No. 86-3057, 1986 WL 13358 (N.D. Cal. Oct. 17, 1986) .........5

24

*Wade v. Indus. Funding Corp.*, No. 92-0343, 1992 WL 207926 (N.D. Cal. May 28, 1992) ............5

25

*Wiley v. Trendwest Resorts, Inc.*,
    No. 04-431, 2005 WL 1910934 (N.D. Cal. Aug. 10, 2005)...........................3 n.1

26

*In re Yahoo! Inc.*, No. 07-3125, 2008 WL 707405 (C.D. Cal. Mar. 10, 2008)..............................5, 8

27

28

1

## Table of Authorities

2

**Federal Statute** Page

3
28 U.S.C. § 636 (2008) .................................................................................................13 n.4

4
**Federal Rule** Page

5
Fed. R. Civ. P. 42 ...................................................................................................11, 14

6
Fed. R. Civ. P. 53 .......................................................................................................13-14

7
Fed. R. Civ. P. 77 ............................................................................................................13

8
**California Cases** Page

9
*Cellular Plus v. Superior Court,*
10  14 Cal. App. 4th 1224, 18 Cal. Rptr. 2d 308 (Cal. Ct. App. 1993)..........................11 n.2, 12

11
*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163, 973 P.2d 527 (1999) ..........................................................................11 n.2

12
*Cianci v. Superior Court,* 40 Cal. 3d 903, 710 P.2d 375 (1985) ...............................11 n.2

13
*Diamond Multimedia Systems, Inc. v. Superior Court,*
14  19 Cal. 4th 1036, 968 P.2d 539 (1999) .........................................................................11

15
*Washington Mut. Bank, FA v. Superior Court,* 24 Cal. 4th 906, 15 P.3d 1071 (2001)....................10

**Miscellaneous** Page

16
Administrative Office of the U.S. Courts, 2007 Judicial Business of the United States Courts,

17
*available at* http://www.uscourts.gov/judbus2007/contents.html (2007)...........................................7

18
Administrative Office of the U.S. Courts, Federal Judicial Caseload Statistics, *available at*
http://www.uscourts.gov/caseload2007/contents.html (Mar. 31, 2007) ..............................................7

19
9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2383 (2008).........12

20
Manual for Complex Litigation (4th ed. 2004) ..............................................................................13

21

22

23

24

25

26

27

28

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER

### I.   Introduction

Meyer's Complaint states federal and California antitrust claims on behalf of a national class of cellular device consumers, arising from QUALCOMM Incorporated's ("Qualcomm") commitments and representations regarding how it would license patents essential to the 3G/UMTS cellular technology standard, and its subsequent reneging of these commitments. One of Qualcomm's competitors, Broadcom Corp., ("Broadcom") brought claims arising from these same facts in *Broadcom Corp. v. Qualcomm Inc.*, No. 05-cv-03350 (D.N.J.) (the "Broadcom Action"). The Broadcom Action is currently pending in the District of New Jersey before the Honorable Mary L. Cooper. However, on May 16, 2008, Broadcom filed a motion to transfer its action from the District of New Jersey to this Court. (Preston Decl. ¶ 2; Exs. 1-2.)

Qualcomm's instant Motion to Transfer is premised entirely on the benefits of consolidating Meyer's class consumer action with the Broadcom Action. Qualcomm candidly states that "the principle 'convenience' consideration here is having related cases litigated in one forum rather than two." (Def.'s Mem. 8.) Thus, Qualcomm's Motion is most directly addressed as a motion to consolidate. At the outset, Broadcom's motion to transfer should be resolved before Qualcomm's Motion to Transfer is considered. It would obviously be illogical to transfer this action to the District of New Jersey on the basis that this case should be consolidated with the Broadcom Action, if the Broadcom Action will be transferred to this forum. The pending resolution of Broadcom's motion to transfer merits denying (or at least staying) the instant Motion, independent of any other ground raised in this brief. *Cf. Bibo v. Federal Express, Inc.*, No. 07-2505, 2007 WL 2972948, at *4 (N.D. Cal. Oct. 10, 2007) (denying motion to transfer based on "speculative" assumption transfer would result in consolidation).

Qualcomm's instant Motion exclusively addresses the judicial economy of consolidation. As set forth below (and in Broadcom's motion), all of the factors relevant to a motion to transfer affirmatively support the Southern District of California as the appropriate

venue to resolve Meyer's claims. Indeed, Qualcomm concedes that this District is the site of its "principal place of business," "ordinarily would be a convenient venue for Qualcomm, and there is little doubt that relevant evidence and witnesses are located in this District." (Def.'s Mem. 8.) Qualcomm does not cite a single case which resulted in the transfer of a case from the defendant's home judicial district. Rather, applicable authority supports venue in Qualcomm's home judicial district, even if a related case (like the Broadcom Action) is pending in a different district. *See Strigliabotti v. Franklin Res., Inc.*, No. 04-0883, 2004 WL 2254556, at *3 (N.D. Cal. Oct. 5, 2004). It is clear that Qualcomm does not sustain its burden of establishing that any of the relevant factors weigh in favor of overruling Meyer's choice of venue. If one or the other of these related actions is transferred, it should be the Broadcom Action, and if Meyer's case and the Broadcom Action are to be heard before one judge, the judge should sit in the Southern District of California.

Even if the Broadcom Action stays in New Jersey, this case should not be sent to New Jersey as well. There are certainly legal and factual issues in Meyer's action which overlap with the Broadcom Action. However, Meyer's case involves several elements entirely absent from the Broadcom Action (such as the application of the Cartwright Act, calculation of consumer damages, and class certification). The Court can address the overlap between Meyer's case and the Broadcom Action just as efficiently by simply coordinating with Judge Cooper as it could through consolidation. Coordination offers all of the judicial economies of consolidation, but will not shift the burden of adjudicating issues of California law involving a California company from the Court to Judge Cooper.

## II.    This District Is the Best Venue for Meyer's Action

Qualcomm does not argue that this District is an improper or inconvenient venue. (*Cf.* Def.'s Mem. 8) (Qualcomm's principal place of business is in this District and it "ordinarily would be a convenient venue"). As explained below, even if the Broadcom Action remains in New Jersey, the benefits of consolidation would not justify transferring Meyer's case because those benefits could be achieved just as well by coordinating with the Broadcom Action. *Cf. Bibo*, 2007 WL 2972948, at *4 (denying transfer where court could avoid duplicative

discovery by coordinating with other district court). Even if consolidation had some marginal

benefit over coordination, that still would not justify the unprecedented measure of

*transferring a case out of Qualcomm's home judicial district*. None of the authorities

Qualcomm cite involve a transfer out of the defendant's home judicial district. Rather, each of

them involved one or more distinguishing factors which justified transfer – but which are not

present here.[1]

---

[1] Qualcomm's authorities address substantively different situations than what is presented here. The majority of Qualcomm's authorities involve the precise same parties litigating the same events in different venues. *See Bomanite Corp. v. Newlook Int'l, Inc.*, No. 07-1640, 2008 WL 1767037 (E.D. Cal. Apr. 16, 2008) (transfer of distributor's declaratory action brought in violation of cure provision in parties' agreement to district where manufacturer had filed breach of contract claim properly under agreement); *CoxCom, Inc. v. Hybrid Patents Inc.*, No. 06-7918, 2007 WL 2500982 (N.D. Cal. Aug. 30, 2007) (transfer of declaratory action filed six months after declaratory action's plaintiff was sued in different venue for infringing on the same patents); *Alexander v. Franklin Resources, Inc.*, No. 06-7121, 2007 WL 518859 (N.D. Cal. Feb 14, 2007) (transfer warranted where plaintiff brought second class action in California after New Jersey court dismissed same cause of action without prejudice and denied class certification); *London and Hull Maritime Ins. Co. Ltd. v. Eagle Pacific Ins. Co.*, No. 96-1512, 1996 WL 479013 (N.D. Cal. Aug. 14, 1996) (excess insurers sued primary insurer for alleged shortfall in settlement fund; primary insurer's declaratory action was transferred back to venue of excess insurers). Where these cases did not involve exactly identical parties, they involved parties whose interests were identical. *Papaleo v. Cingular Wireless Corp.*, No. 07-1234, 2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) (transfer of one class action to district where another class action with overlapping class definitions and class claims was pending); *Wiley v. Trendwest Resorts, Inc.*, No. 04-431, 2005 WL 1910934, at *5 (N.D. Cal. Aug. 10, 2005) (transfer of class action to other venue where same plaintiff's attorney brought a complementary class action). Broadcom and Meyer are obviously two different parties with two different sets of interests that diverge and even conflict on certain points (as discussed below).

Indeed, many of these authorities expressly discuss a suspicion of forum-shopping by the plaintiff. *Bomanite Corp.*, 2008 WL 1767037, at *10 (plaintiff's "timing suggest[ed] . . . possibl[e] forum-shopping"); *CoxCom*, 2007 WL 2500982, at *2 (declaratory action's plaintiff "appears to have engaged in forum shopping"); *Alexander*, 2007 WL 518859, at *4 ("[o]ne could reasonably infer forum shopping here"); *Wiley*, 2005 WL 1910934, at *5 (while complementary class actions in two different venues did not "conclusively establish . . . in forum shopping," transfer was appropriate without any explanation for procedural history). As Meyer's first and only choice of venue was the judicial district in which Qualcomm's headquarters are located, there is no credible charge of forum-shopping here.

Likewise, some of Qualcomm's authorities hinged on a particular risk that inconsistent rulings could prejudice the parties. In *Pacific Coast Federation v. Gutierrez*, the plaintiffs filed two separate suits against two different government agencies in two different district that challenged changes to a single environmental resource plan. The *Pacific Coast* court was "particularly troubled by the possibility" of "inconsistent outcomes if the cases are handled by different courts." *Pac. Coast Fed'n v. Gutierrez*, No. 05-3232, 2006 WL 194507, at *3 (N.D. Cal. Jan. 24, 2006) (transfer of case was "in the interest of justice" because it would sure any relief granted in one or both cases would be "fashioned by a single judge who has the ability to appreciate its broad implications"). *See also London and Hull*, 1996 WL 479013, at *5 (absence of transfer could result in "inconsistent judgments . . . which could work an

1

2        As the movant, Qualcomm bears the burden of establishing that Meyer's action should

3   be moved to the District of New Jersey. *Commodity Futures Trading Commission v. Savage*,

4   611 F.2d 270, 279 (9th Cir. 1979); *Los Angeles Memorial Coliseum Commission v. National*

5   *Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981) ("[t]he burden of establishing that an

6   action should be transferred is on the moving party," citing *Savage*). *See also Bibo*, 2007 WL

7   2972948 at *1. Qualcomm does not satisfy that burden. The factors analyzed in a motion for

8   transfer fall into three categories – objective, public, and private. Under each of these

9   categories, the Southern District of California is a better venue for Meyer's action than the

10  District of New Jersey. (Indeed, Broadcom argues it is the better venue for the Broadcom

11  Action. (Preston Decl. ¶ 2; Ex. 2.))

12      **A.    Meyer's Choice of Venue in Qualcomm's Home Judicial District Is Entitled
              to Deference**

13       While the choice of venue of a plaintiff suing on behalf of a national class action may

14  receive less deference than an individual plaintiff's choice of venue, it is still entitled to some

15  deference because "other putative class members . . . need [not] appear in this action."

16  *Parrish v. National Football League Players Inc.*, No. 07-943, 2007 WL 1624601, at *6 (N.D.

17  Cal. June 4, 2007). Hence, a movant for transfer still bears the burden of demonstrating that

18  the relevant factors tip the scale in favor of transfer, even in a class action. *See Ray v.*

19  *BlueHippo Funding, LLC*, No. 06-1807, 2007 WL 4259424, at *3  (N.D. Cal. Dec. 4, 2007)

20  (denying transfer where defendant did not bear burden of establishing factors in favor of

21  transfer, even where class plaintiff's choice of venue was "diminished"). More importantly, a

22  class plaintiff's choice of venue has more weight "where [as Meyer's Complaint alleges] there

23  is a significant connection between the forum and the activities alleged in the complaint."

24  _____

25  injustice"; specific concern was that one court could rule primary carrier was liable for
    shortfall in settlement fund, while the other rules that the excess carriers were liable). Again,

26  these rationales do not apply here: the interests of Meyer and Broadcom diverge and even
    conflict. As Qualcomm does not present any specific risk arising from inconsistent rulings in

27  the Broadcom action and this action, this factor cannot be weighed in favor of transfer. *See*
    *Bibo v. Federal Express, Inc.*, No. 07-2505, 2007 WL 2972948, at *4 (N.D. Cal. Oct. 10,

28  2007) (denying motion to transfer class action to district where similarly situated plaintiff's
    claim was pending, absent "specific information that indicates there is a high risk for
    inconsistent adjudication").

*Strigliabotti*, 2004 WL 2254556 at *3. *See also Wade v. Indus. Funding Corp.*, No. 92-0343, 1992 WL 207926, at *3 (N.D. Cal. May 28, 1992) (same, in shareholder derivative action). In *Strigliabotti*, the court denied transfer from the district of defendants' principal place of business to the District of New Jersey, where related litigation was pending. *Strigliabotti* afforded weight to national class plaintiffs' choice of venue, where the choice to sue "on defendants' home turf [was] based in logic and on convenience." *Id*. at *4."Plaintiffs' choice of forum remains significant in a class action where it is preferable to other forums in administering the action and protecting the class." *Bibo*, 2007 WL 2972948, at *2 (noting deference to class plaintiffs' choice of venue where class plaintiffs resided in district). Further, Qualcomm's burden of establishing that this action should be transferred is "especially heavy in antitrust suits, where plaintiff's choice of forum is entitled to particular respect ." *Los Angeles Memorial*, 89 F.R.D. at 500 (citing cases). *See also United States v. Syufy Enterprises*, No. 86-3057, 1986 WL 13358, at *1 (N.D. Cal. Oct. 17, 1986) (same, citing "liberal venue statute for antitrust actions" Qualcomm does not sustain this burden.

**B.    Objective Factors Support Venue in the Southern District of California**

The objective factors determining whether a case should be transferred include the location of the events giving rise to the cause of action, "the contacts relating to the plaintiff's cause of action in the chosen forum," and "the respective parties' contacts with the forum." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). These factors favor venue in this District where the the anticompetitive policy decisions at issue were made at Qualcomm's corporate headquarters within this District. *Cf. In re Yahoo! Inc.*, No. 07-3125, 2008 WL 707405, at * 9 (C.D. Cal. Mar. 10, 2008) (finding plaintiffs' claims had strong contacts with chosen venue where "Yahoo!'s headquarters [wa]s the factual center of th[e] case, and the locus of all relevant decision making") *with* Pl.'s Compl.13, 49 ("majority of the acts alleged herein were committed in" this District; "Qualcomm communicates with its licensees and potential licensees, and its UMTS Licensing Practices emanate, from its headquarters in California").

1          **C.      Public Factors Favor the Southern District of California**

2          Public factors relevant to a motion for transfer include "the state that is most familiar

3   with the governing law," and "the relevant public policy of the forum state, if any." *Jones*, 211

4   F.3d at 498, 499. *See also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843

5   (9th Cir. 1986) (public factors affecting transfer include "the administrative difficulties

6   flowing from court congestion; the local interest in having localized controversies decided at

7   home; the interest in having the trial of a diversity case in a forum that is at home with the law

8   that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in

9   the application of foreign law; and the unfairness of burdening citizens in an unrelated forum

10  with jury duty"); *Carolina Cas. Co. v. Data Broadcasting Corp.*, 158 F. Supp. 2d 1044, 1048

11  (N.D. Cal. 2001) ("familiarity of each forum with the applicable law," "any local interest in

12  the controversy," and "the relative court congestion and time of trial in each forum").

13         The public interest favors litigation of Meyer's claims before California courts that

14  have the most familiarity with the applicable law. "A diversity case should be litigated 'in a

15  forum that is at home with the law that must govern the action.'" *Costco Wholesale Corp. v.*

16  *Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1190 (S.D. Cal. 2007) (quoting *Decker Coal*, 805

17  F.2d 834, 843). Correct application of California choice of law is particularly important here,

18  because California's choice of law presumes that California law applies to class actions, such

19  as Meyer's Complaint. *See Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921

20  & n.8, 15 P.3d 1071, 1081 & n.8 (2001). Federal courts within California are more familiar

21  with California's choice of law rules than federal courts outside of California. *Costco*, 472 F.

22  Supp. 2d at 1191.

23         Because "more of the events leading up to this dispute occurred in" this District, this

24  District has a greater interest than the District of New Jersey. *Carolina Cas.*, 158 F. Supp. 2d

25  at 1050. Moreover, while California and New Jersey share an interest in protecting their

26  residents, only California has an interest in regulating the conduct of its resident businesses at

27  stake here. *Cf. Foster v. Nationwide Mut. Ins. Co.*, No. 07-4928, 2007 WL 4410408, at *7

28  (N.D. Cal. Dec. 14, 2007) (considering both "the location of defendant's corporate

headquarters and the place where the . . . decisions at issue . . . were made" and California's interest "in protecting the rights of the putative California class members"). *See also Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1063, 968 P.2d 539, 556 (1999) (California "has a clear and substantial interest in preventing fraudulent practices in this state which may have an effect both in California and throughout the country"). Even though Meyer's claims "may have connections with more than one state," it does not diminish the fact that there is "a distinct local interest in [this] controversy." *Lincoln General Ins. Co. v. Access Claims Adm'rs, Inc.*, No. 07-1015, 2007 WL 2492436, at *4 (E.D. Cal. Aug. 30, 2007) (local interest factor does not require "exclusively local interest in the controversy"). Nor does the pending litigation in New Jersey blunt the dominance of California's interest over New Jersey's interest. *See Strigliabotti*, 2004 WL 2254556, at *6 (defendant's "presence in California gives rise to a local interest in the controversy" even where defendant had connections in California and New Jersey and litigation was pending in New Jersey).

Lastly, public interest favors retaining this case in this District because the District of New Jersey is substantially more congested. The District of New Jersey has a total of 5,972 cases pending on its docket, and 316 of those cases have been pending for over 3 years. *See* Administrative Office of the U.S. Courts, 2007 Judicial Business of the United States Courts 178, 180, *available at* http://www.uscourts.gov/judbus2007/contents.html (2007). In contrast, this District has 2,134 cases on its docket, only 111 of which have been pending for over three years. *Id.* at 180. The median interval between filing a case and its trial in the District of New Jersey is 31.3 months; in this District it is 25.5 months. Administrative Office of the U.S. Courts, Federal Judicial Caseload Statistics, *available at* http://www.uscourts.gov/caseload2007/contents.html (Mar. 31, 2007) (Table C-5).

### D.    Private Factors Favor the Southern District of California

The relevant private factors affecting the parties and non-party witnesses relevant to a motion to transfer include "the plaintiff's choice of forum," "the differences in the costs of litigation in the two forums," "the availability of compulsory process to compel attendance of unwilling non-party witnesses, and . . . the ease of access to sources of proof." *Jones*, 211 F.3d

at 498-99. *See also Decker Coal*, 805 F.2d at 843 (private factors affecting transfer include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive"); *Carolina Cas.*, 158 F. Supp. 2d at 1048 ("plaintiff's choice of forum," "convenience of the parties," "convenience of the witnesses," and "ease of access to the evidence"). Each of these factors weighs in favor of venue in this District. More to the point, these factors do not provide Qualcomm with adequate grounds to upset Meyer's choice of venue.

It is certain that litigating in the Southern District of California will be more convenient for Meyer (who resides in the Northern District of California) than litigating in the District of New Jersey. Meyer's choice of venue in the defendant's home judicial district should receive deference, notwithstanding the Complaint's class allegations.

Qualcomm's own exhibits make it clear that the other private factors – availability of evidence and the convenience of the parties and witnesses – also favor this District. With respect to documents, Qualcomm maintains relevant documents in this District and in Massachusetts. (Loft Decl., Ex. 3 at 184.) Broadcom maintains relevant documents in this District and in the Central District of California, as well as in New Jersey. (Loft Decl., Ex. 4 at 222.) The geographic distribution of these documents favors venue in this District. Even where "developments in electronic conveyance have reduced the cost of document transfer somewhat, the cost of litigations will be substantially lessened if the action is venued in the same district where most of the documentary evidence is found." *Foster*, 2007 WL 4410408 at * 6 (citation, punctuation omitted). *See also Italian Colors Rest. v. Am. Express Co.*, No. 03-3719, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003)). *See also In re Yahoo!,* 2008 WL 707405 at * 9 (location of relevant documents in defendant's corporate headquarters weighed in favor of that venue).

Qualcomm cannot justify a change of venue based on the convenience of witnesses, either. It is significant that Qualcomm does ***not*** argue that New Jersey would be a more convenient forum for the majority of witnesses, but only that the Court should "prevent

witnesses from having to submit to two different depositions and from having to travel to two different forums to attend court proceedings." (Def.'s Mem. 8.) As set forth in Section III, coordinating with the New Jersey court will avoid duplicate depositions just as well as consolidation.

The geographic distribution of witnesses tilts deeply in favor of the Southern District of California over the District of New Jersey. It is a rule of thumb that "litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions." *Italian Colors*, 2003 WL 22682482, at *5. When witnesses' actual geographic location is taken into account, it is clear that the convenience of witnesses favors this District. By Plaintiff's count, Qualcomm identifies 71 Qualcomm witnesses and 64 non-Qualcomm witnesses. in its Rule 26(a) disclosures. (Loft Decl., Exs. 3, 5 at 168-83, 228-43.) Of the Qualcomm witnesses, one is from New Jersey and eleven are from California. (Loft Decl., Ex. 3 at 168-83.) Of the non-Qualcomm witnesses, seventeen of the 64 individuals Qualcomm identifies are located in California. (Loft Decl., Ex. 5 at 228-43.) Conversely, Broadcom's disclosure identifies 95 individual party witnesses, six non-party individual witnesses, and 165 non-party corporate witnesses. (Loft Decl., Ex. 4 at 187-222.) Of the party witnesses, over 70 are found in California – just 11 are found in New Jersey. (*Id*. 187-96)  Of non-party witnesses, two individuals and 17 corporations are located in California – and just five corporate witnesses are found in New Jersey. (*Id*. 196-222.) Even if it was Meyer that bore the burden of demonstrating the convenience of his favored forum, California would prove to be marginally closer and more accessible than New Jersey for the many non-party witnesses located in Asia. In any event, it is plain that it will be, on balance, more convenient to conduct this litigation in the Southern District of California.

Lastly, the convenience of the New Jersey-based witnesses cannot be weighed in support of Qualcomm's motion to transfer. Broadcom's disclosure, incorporated as an exhibit in support of Qualcomm's Motion, does not identify individual witnesses or state their location (which may be quite different than the location listed for the corporation). "To demonstrate an inconvenience to witnesses, the moving party must identify relevant witnesses,

state their location and describe their testimony and its relevance." *S.E.C. v. Rose Fund, LLC*, No. 03-4593, 2004 WL 2445242, at *3 (N.D. Cal. Jan. 9, 2004). *See also Royal Queentex Enterprises v. Sara Lee Corp.*, No. 99-4787, 2000 WL 246599, 6 (N.D. Cal. Mar. 1, 2000) (quoting *Steelcase, Inc. v. Haworth, Inc.*, No. 96-1964, 1996 WL 806026, at *3 (C.D. Cal. May 15, 1996)). Qualcomm's Motion fails altogether to explain the relative importance of the New Jersey witnesses. Qualcomm cannot rely on "'vague generalizations' of inconvenience," but must "demonstrate . . . who the key witnesses will be and what their testimony will generally include." *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998). This burden of particularity extends to "the materiality and importance of [witnesses'] testimony and . . . their accessibility and convenience to the forum." *Gherebi v. Bush*, 352 F.3d 1278, 1304 n.33 (9th Cir. 2003), *vacated on other grounds*, 542 U.S. 952 (2004). *See also Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160-61 (S.D. Cal. 2005) (court must weigh "importance of witnesses"). As Qualcomm has not identified the relevant New Jersey witnesses or indicated the relevance of their testimony, the Court may not consider the convenience of these witnesses in favor of transfer. *See, e.g.*, *Bibo*, 2007 WL 2972948, at *3 (witness convenience carries no weight in resolving motion for transfer, where party fails to identify witnesses with particularity); *Ray*, 2007 WL 4259424, at *3 (same); *Rose Fund*, 2004 WL 2445242, at *3 (same); *Royal Queentex*, 2000 WL 246599, at * 6 (same).

**III.    The Court Can Better Address the Overlap with the Broadcom Action Through Coordination Rather Than Consolidation**

Qualcomm warns that separately maintaining the Meyer action and the Broadcom action "in different forums simultaneously" will "be an unnecessary waste of time, money and judicial resources" because the cases will involve "much of the same motion practice, document discovery and deposition and in-court testimony." (Def.'s Mem. 6.) Qualcomm's argument presumes, however, that transfer will lead to consolidation. This presumption is entirely too speculative where Broadcom has moved to transfer its case to this forum. *Bibo*, 2007 WL 2972948, at *4 (rejecting argument for transfer that was based on "speculative" assumption transfer would result in consolidation).

1     Even if the Broadcom Action stays in New Jersey, Qualcomm has not shown that

2   transfer and consolidation will result in judicial economies which cannot be achieved through

3   simply coordinating with the Broadcom Action. *Id.* (declining transfer where "duplicative

4   discovery" could be avoided "by coordinating discovery with the actions pending before Judge

5   Fischer in the Central District"). As Qualcomm directs its arguments for transfer towards the

6   benefits of consolidation, it should bear the "burden of establishing that the judicial economy

7   and convenience benefits of consolidation outweigh any prejudice." *Single Chip Systems*

8   *Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007) (motion to

9   consolidate under Rule 42) (citation, punctuation omitted). In an actual motion to consolidate,

10  the court weighs the saving of time and effort consolidation would produce against any

11  inconvenience, delay or expense that it would cause. *Id.* (citation, punctuation omitted).

12  Significantly, consolidating proceedings with "disparate trial dates or different stages of

13  discovery" weighs against the consolidation of the cases. *Id.* (citing 9 Charles Alan Wright &

14  Arthur R. Miller, Federal Practice and Procedure § 2383 (2006)). As shown below, the less

15  drastic option of coordination can recreate any judicial economy of transfer and/or

16  consolidation but will not result in delaying discovery and trial in the Broadcom Action.

17         **A.    Meyer's Case Involves Distinct Factual and Legal Issues Not Present in the
18                 Broadcom Case**

19         The claims asserted by Broadcom only partially overlap Meyer's claims. Meyer asserts

20  claims under the Cartwright Act (Cal. Bus. & Prof. Code §§ 16720, 16726). It is significant

21  that liability arising from this claim may extend to acts outside the scope of liability on

22  Sherman Act claims.[2] Moreover, Meyer's damages and Broadcom's damages are calculated in

23  _____
24  [2] The Cartwright Act "is broader in range and deeper in reach than the Sherman Act . . ."
    *Cianci v. Superior Court*, 40 Cal. 3d 903, 920, 710 P.2d 375, 384 (1985). *See also*
    *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 991 (9th Cir. 2000) (same); *Cellular*
25  *Plus v. Superior Court*, 14 Cal. App. 4th 1224, 1234-35, 1240-43, 18 Cal. Rptr. 2d 308,
    313-14, 317-19 (Cal. Ct. App. 1993) (standing under Cartwright Act applies to plaintiffs with
26  direct or indirect antitrust injury, and Sherman Act's filed-rate defense does not apply to
    Cartwright Act claim) Likewise, the coverage of the unfair competition law (Cal. Bus. & Prof.
27  Code § 17200) ("UCL") is "sweeping, embracing anything that can properly be called a
    business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v.*
    *Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527, 540 (1999). (*Cf.* Compl.
28  127, 132 (alleging claim in the alternative that "Qualcomm's commitment to FRAND
    licensing was not intentionally false at the time it was made and Qualcomm [violated the law]

two entirely different ways. An antitrust violation damages consumers by "caus[ing] [then] to pay a higher price . . . than [they] otherwise would have paid." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 340 (1979).

> [A competitor's antitrust] injuries are neither derived from nor measured by injuries consumers may have suffered. Any injury to consumers would result from paying a supracompetitive price for [the relevant product]. [A competitor's] injury, on the other hand, is the result of foregone profits, i.e., the difference between the competitive market price it would have charged had it been in the market and its total costs.

*Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 817 (D.C. Cir. 2001). *See also Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1233, 18 Cal. Rptr. 2d 308, 312 -313 (Cal. Ct. App. 1993) (consumers measure of damage is artificial inflation of price attributable to Cartwright Act violation); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007) (measure of restitution in consumer UCL claim was anticompetitive overcharge). Finally, Meyer brings his claims on behalf of a national class of consumers, and his claims will necessitate motion practice on class certification.

Needless to say, the Broadcom action does not involve class certification, application of the Cartwright Act, or calculation of consumer antitrust damages. Transferring Meyer's case would not eliminate the judicial burdens entailed in adjudicating Meyer's claims, but would only shift them onto Judge Cooper. *Cf. Decker Coal*, 805 F.2d at 843 (transfer not appropriate where it "merely shift[s] rather than eliminate[s] inconvenience"). Moreover, Broadcom and Meyer have divergent and conflicting interests with respect to damages. Broadcom's damages (lost profits) increase as the natural competitive price for its products increase, while Meyer's damages (anticompetitive overcharge) increases as the natural competitive price for his cell phone decreases. This conflict weighs against consolidation. 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2383 (2008) (consolidation may be "improper if it aligns a party in a portion of the litigation with other parties with whom he or she has a conflicting interest with regard to other portions of the consolidated litigation").

by simply reneging on its commitment to FRAND licensing for the UMTS patents").)

**B.    Coordination with Broadcom Action Can Eliminate Duplicative Efforts**

Qualcomm's liability does hinge on many of the same factual and legal issues for both on Meyer's claims and Broadcom's claims. However, simply coordinating motions practice and discovery with the Broadcom action can prevent wasteful duplication pertaining to these common issues. *Cf. Bibo*, 2007 WL 2972948, at *4 (declining transfer where "duplicative discovery" could be avoided "by coordinating discovery with the actions pending before Judge Fischer in the Central District").

Coordination provides more flexibility than consolidation – the Court can retain control over the unique aspects of this case, while deferring to Judge Cooper on the aspects which overlap the Broadcom Action. The Manual for Complex litigation provides several possible methods of coordination. First, this Court can hold joint conferences and issue "joint or parallel orders" with Judge Cooper in the Broadcom Action. Manual for Complex Litigation, § 20.14 (4th ed. 2004). *See also id.*, § 40.51 (sample order). With the parties' consent, the Court can order joint hearings in Judge Cooper's courtroom, while the Court attends by telephone or in person. *Id.* § 20.14 (citing Fed. R. Civ. P. 77(b)).[3] Second, this Court can arrange for the joint appointment of a special master under Rule 53 for pretrial matters or any matters consented to by the Court with Judge Cooper. *Id. See also id.*, § 40.51 (sample order). Indeed, the Court has the authority to appoint Judge Cooper as special master under Rule 53 (subject, obviously, to the consent of the Court and Judge Cooper). *See Seafirst Corp. v. Jenkins*, No. 85-0346, 1986 WL 566, at *1 (D.D.C. July 18, 1986) (court appointed district judge in another district as special master under Rule 53, in light of judge's familiarity with the case).[4] Rule 53 provides the Court the ability to tailor a special master's mandate to

---

[3] Meyer will consent to holding any reasonably-timed hearing in Judge Cooper's courtroom on matters common to both cases.
[4] District judges often serve as special masters for cases over which they do not preside. *See N.L.R.B. v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1419 (9th Cir. 1994) (following *United States v. Charmer Indus., Inc.*, 722 F.2d 1073, 1076 (2d Cir. 1983); *N.L.R.B. v. Local 282, Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 428 F.2d 994, 1006 (2d Cir. 1970); *Mayfield v. Gonzales*, No. 04-1427, 2005 WL 1801679, at *19 (D. Or. July 28, 2005); *Puerto Rican Legal Defense and Educ. Fund, Inc. v. Gantt*, 796 F. Supp. 681, 684 (E.D.N.Y. 1992); *Atlantic City Elec. Co. v. General Elec. Co.*, 244 F. Supp. 707 (S.D.N.Y. 1965). Also, federal law expressly contemplates the appointment of magistrate judges in other districts as special masters. *See* 28 U.S.C. § 636(f) (2008). *See also Belluomini v. United States*, No. 93-5448, 1993 WL 427722 (N.D. Ill. Oct. 20, 1993).

1  only those aspects of this case already present in the Broadcom Action.

2      In short, coordination provides the Court a scapel with which it can precisely address

3  the partial overlap between this action and the Broadcom Action. Comparatively, the

4  consolidation Qualcomm seeks is a broadsword. If the Broadcom Action is not transferred to

5  this District, the Court does not need to transfer this action to New Jersey to ensure judicial

6  economy.

7  **C.    Consolidation for Trial Cannot Provide Any Marginal Benefits Over Coordination Without Delaying the Broadcom Action**

8

9      As shown above, the Court can eliminate most or all duplication of pre-trial

10 proceedings by simply coordinating with the Broadcom action. It is also important that

11 consolidating this case in New Jersey will either fail to produce any marginal benefits or will

12 delay the Broadcom Action.

13     If this case is transferred to the District of New Jersey, the case will end in one of three

14 ways. First, Qualcomm may seek to have this case consolidated with the Broadcom Action for

15 trial under Rule 42. As shown above, coordination can replicate any of consolidation's

16 judicial economies with respect to pre-trial proceedings. With respect to trial, however,

17 Meyer's action cannot be consolidated without delaying the Broadcom Action. Judge

18 Cooper's order of November 30, 2007 sets the close of fact discovery "on or before December

19 19, 2008." (Loft Decl., Ex. 6 at 245.) It would be improper (not to say foolhardy) for Meyer to

20 commit to completing fact discovery in this complex antitrust action in six months. Hence,

21 consolidation for trial would inevitably delay the Broadcom Action.[5] The "risk of delaying

22 trial" is an important factor in determining whether consolidate cases. *Antoninetti v. Chipotle*

23 *Mexican Grill, Inc.*, 05-1660, 2007 WL 2669531, at *2 (S.D. Cal. Sept. 7, 2007) (denying

24 consolidation). "Where a case that is ready for or close to trial would be held up pending

25 completion of pretrial proceedings in another case, courts have consistently denied

26 consolidation." *Id.* (citing cases, citations omitted). Courts have noted "strong articulated

27

28

---

[5] Of course, the Broadcom Action will also be delayed if is transferred to this District and consolidated with Meyer's case. However, that delay would be the price for litigating in a judicial district of Broadcom's choice – not a delay imposed by the actions of a third party.

1
2
3
4
5
6

congressional public policy concern" with consolidation of government antitrust suits with private damages suits, and found that the "inefficiencies and inconvenience to antitrust defendants are trumped by an unwillingness to countenance delay in the prosecution of Government antitrust litigation." *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 146 (D. Del. 1999). Similar policy rationales weigh against delaying Broadcom's competitor-side antitrust case for Qualcomm's convenience.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

Second, if Meyer's case is not consolidated for trial, the Broadcom Action will necessarily go to trial first (sometime in June 2009, per Judge Cooper's November 2007 order). A victory for Broadcom will eliminate the necessity of Meyer proving Qualcomm's liability at his trial. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 332-333 (1979) (where defendant received "full and fair" opportunity to litigate facts underlying its liability, it was estopped from relitigating those facts under offensive issue preclusion). The remaining issues of damages and class certification are separate and distinct to Meyer. Because these issues will not be raised in the Broadcom action, a transfer will succeed only in shifting the burden of adjudicating these issues to Judge Cooper. *Cf. Decker Coal*, 805 F.2d at 843 (transfer not appropriate where it "merely shift[s] rather than eliminate[s] inconvenience"). Third, if Broadcom not does prevail or if Broadcom settles with Qualcomm, Meyer's proof of Qualcomm's liability at trial will entail the same burdens and inconveniences that Broadcom's trial would have. Again, the effect of transfer would be to improperly shift the burdens of adjudicating this case to Judge Cooper and to the District of New Jersey.

22

**IV.    Conclusion**

23
24
25
26
27

All of the judicial economies cited by Qualcomm as weighing in favor of transfer are dependent on consolidation with the Broadcom Action. It would not promote judicial economy to decide Qualcomm's Motion until Broadcom's motion to transfer from the District of New Jersey to this District can be decided. As the situation stands, success for Broadcom's motion would moot all of Qualcomm's arguments on this Motion.

28

This case belongs in this District. The clear center of gravity for this case is in California and in this District, not least because Qualcomm's headquarters are here. Even

Qualcomm does not pretend that there is any reason to transfer this case outside of consolidation with the Broadcom Action.

Even if the Broadcom Action remains in the District of New Jersey, this Court can much more effectively address the overlap between the two cases with coordinating with Judge Cooper. Consolidation offers no judicial economy that will not prejudice Broadcom that cannot be recreated through coordination.

Date:       May 19, 2007

By: s/Alan Himmelfarb

Alan Himmelfarb (Cal. Bar. No. 90480)
KAMBEREDELSON, LLC
2757 Leonis Blvd.
Los Angeles, CA 90058
(323) 585-8696
ahimmelfarb@kamberedelson.com

Jay Edelson
Ethan Preston
KAMBEREDELSON, LLC
The Monadnock Building
53 West Jackson, Suite 550
Chicago, IL 60604
(312) 589-6370

Karin E. Fisch
Orin Kurtz
ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, NY 10016
(212) 889-3700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

Pursuant to 28 U.S.C.§ 1746, I hereby certify that I served Plaintiff's Opposition to

Defendant's Motion to Transfer in the foregoing case upon the parties listed below by causing

the foregoing document to be transmitted to the Electronic Filing System in the manner

prescribed by the Court's Electronic Case Filing Administrative Policies and Procedures

Manual on May 19, 2008:

William S Boggs
Brian A Foster
Christopher James Beal
Timothy Scott Blackford
DLA Piper Rudnick Gray Cary
401 B Street, Suite 1700
San Diego, CA 92101-4297

Karl C. Huth
Duane L Loft
Elizabeth L. Grayer
Evan R Chesler
Peter T. Barbur
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

*Attorneys for QUALCOMM Incorporated*

*Attorneys for QUALCOMM Incorporated*

Date:         May 19, 2008

By: s/Alan Himmelfarb
    ALAN HIMMELFARB