1  EVAN R. CHESLER (*pro hac vice*)
   PETER T. BARBUR (*pro hac vice*)
2  ELIZABETH L. GRAYER (*pro hac vice*)
   CRAVATH, SWAINE & MOORE LLP
3  825 Eighth Avenue
   New York, NY 10019
4  Telephone: (212) 474-1000
   Facsimile: (212) 474-3700
5
   WILLIAM S. BOGGS (Bar No. 053013)
6  BRIAN A. FOSTER (Bar No. 110413)
   TIMOTHY S. BLACKFORD (Bar No. 190900)
7  DLA PIPER US LLP
   401 B Street, Suite 1700
8  San Diego, CA  92101-4297
   Telephone:  (619) 699-2700
9  Facsimile:  (619) 699-2701

10  Attorneys for Defendant
    QUALCOMM INCORPORATED
11

12                    UNITED STATES DISTRICT COURT

13                  SOUTHERN DISTRICT OF CALIFORNIA

14  JESSE MEYER, an individual, on his own      Case No. 08cv0655-WQH (LSP)
    behalf and on behalf of all similarly
15  situated,                                   **QUALCOMM INCORPORATED'S REPLY
                                                MEMORANDUM IN FURTHER SUPPORT
16              Plaintiff,                       OF ITS MOTION TO DISMISS**

17         v.                                   **NO ORAL ARGUMENT UNLESS
                                                REQUESTED BY THE COURT**
18  QUALCOMM INCORPORATED, a
    Delaware corporation,
                                                Date:      August 4, 2008
19              Defendant.                       Time:      11:00 a.m.
                                                Judge:     Hon. William Q. Hayes
20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
  SAN DIEGO        WEST\21479658.1                                    08cv0655-WQH (LSP)

1    **I.    INTRODUCTION**

2         As set forth in Qualcomm's opening brief ("Mem."), Plaintiff's Complaint should be

3    dismissed because (i) he lacks standing and (ii) his Complaint fails to state a claim under Sections

4    1 and 2 of the Sherman Act, the Cartwright Act and California's Unfair Competition Law

5    ("UCL").  None of the arguments offered in Plaintiff's Opposition ("Opp.") has any merit.

6         *First*, Plaintiff argues incorrectly that the standing analysis set forth in *Associated General*

7    *Contractors* ("*AGC*") does not apply to his claims under Section 16 of the Clayton Act and the

8    Cartwright Act.  Plaintiff then misapplies the only two *AGC* factors on which Qualcomm relies—

9    remoteness and antitrust injury—by incorrectly analogizing his case to that of a "stereotypical"

10   indirect purchaser who purchases a product resold by a distributor and then sues the

11   manufacturer.  That analogy fails in light of Plaintiff's expressly pleaded theory of causation,

12   according to which Plaintiff's alleged injury is at least three levels removed from Qualcomm's

13   alleged conduct:  Qualcomm is alleged to license cellular chipset manufacturers, which then sell

14   chipsets to handset manufacturers, which then sell handsets to vendors, which finally sell to

15   customers such as Plaintiff at prices subsidized by cell phone service providers.  (Compl. ¶ 70.)

16   Plaintiff cannot and does not cite any case in which a court has found antitrust standing based on

17   an injury anywhere near this remote.  In addition, Plaintiff has not suffered an "antitrust injury"

18   because Qualcomm has not sold—at any stage of the supply chain—the cell phone that Plaintiff

19   purchased.  These defects are fatal to Plaintiff's entire Complaint.

20        *Second*, Plaintiff cannot state a claim for violation of Section 1 of the Sherman Act or the

21   Cartwright Act based upon his theory of "involuntary conspiracy".  Plaintiff's attempt to suggest

22   that such a theory is generally available after the Supreme Court's *Monsanto* decision is simply

23   wrong.  In any event, even if such a claim were legally viable in theory, Plaintiff cannot and does

24   not explain away his failure to allege the necessary facts.

25        *Third*, Plaintiff's Sherman Act Section 2 claim that Qualcomm monopolized the cell

26   phone market is defective for the simple reason that Qualcomm is not alleged to supply cell

27   phones.  No matter how many times Plaintiff's Opposition brief or Complaint asserts in

28   conclusory terms that Qualcomm has "market power" in the cell phone market, the law is clear

DLA PIPER US LLP
   SAN DIEGO          WEST\21479658.1                              -1-
                                                                            08cv0655-WQH (LSP)

1   that a firm cannot monopolize a market in which it does not compete.

2   *Fourth*, having failed to state a claim under the antitrust laws, Plaintiff's allegations

3   cannot support a claim under the UCL.

4   **II.    PLAINTIFF LACKS STANDING.**

5          **A.    Plaintiff Concedes That the Proximate Cause and Antitrust Injury Tests**

6                 **Apply Fully to Determining Whether He Has Standing.**

7          Plaintiff does not dispute that, to survive a motion to dismiss, his Complaint must allege

8   facts establishing proximate cause and antitrust injury.  The Complaint fails to do so, and

9   Plaintiff's argument that it passes muster under some "relaxed" standing analysis applicable to his

10  claims for equitable relief and violations of the Cartwright Act (Opp. at 3-4, 10) is entirely

11  without merit.

12         *First*, Qualcomm's motion to dismiss does not in any way rely on the *AGC* factors that are

13  relevant only to Sherman Act claims for damages.  Rather, Qualcomm's standing argument relies

14  on the *AGC* tests for proximate cause and antitrust injury, which are fully applicable to

15  determining whether Plaintiff has standing under both Section 16 of the Clayton Act and the

16  Cartwright Act.  (*See* Mem. at 9.)[1]  Indeed, Plaintiff repeatedly *concedes* that these two tests are

17  applicable to his claims.  (*E.g.*, Opp. at 3 ("[A]ntitrust injury remains an element of antitrust

18  standing under Section 16" and that injury must "proximately result[] from the alleged antitrust

19  violation".); *id.* at 10 ("A Cartwright Act plaintiff must demonstrate [that] an antitrust violation

20  was the proximate cause of his injuries and antitrust injury.").)

21         *Second*, as Qualcomm explained in its opening brief, Section 16 and the Cartwright Act

22  "relax" the antitrust standing requirements only insofar as they remove the absolute bar to indirect

23  purchaser claims established in *Illinois Brick*. (Mem. at 10-11.)[2]  Thus, even when an indirect

---

24         [1] The law is clear that, under both Section 16 and the Cartwright Act, proximate cause and
    antitrust injury remain critical requirements for antitrust standing. *See City of Pittsburgh v. W.*
25  *Penn. Power*, 147 F.3d 256, 268 (3d Cir. 1998) (under Section 16, "[t]he absence of antitrust
    injury and causal connection clearly defeat [plaintiff's] standing"); *Morrison v. Viacom, Inc.*, 66
26  Cal. App. 4th 534, 548-49 (1998) (Cartwright Act standing requires "antitrust injury" and "that an
    antitrust violation was the proximate cause of [plaintiff's] injuries"); *Vinci v. Waste Mgmt., Inc.*,
27  36 Cal. App. 4th 1811, 1814-16 (1995) (applying *AGC* factors under the Cartwright Act).
         [2] The only other difference is that, for Section 16 cases, a plaintiff need show only a "threat of
28  injury" rather than an accrued injury. *W. Penn. Power*, 147 F.3d at 268.  But that distinction is

-2-

1    purchaser brings suit under Section 16 or the Cartwright Act, courts can—and often do—dismiss

2    for lack of standing based upon remoteness or upon the plaintiff's failure to allege an antitrust

3    injury. *See, e.g., Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177, 1200 (S.D. Cal. 2002) (no

4    standing under Section 16 because injury was too speculative); *Morrison v. Viacom, Inc.*, 66 Cal.

5    App. 4th 524, 548-49 (1998) (no Cartwright Act standing where customers had "failed to allege

6    antitrust injury"). Plaintiff's Complaint likewise should be dismissed based upon these two

7    factors.

8              **B.    Plaintiff's Express Theory of Causation Precludes Standing.**

9         To have antitrust standing, a plaintiff must allege an injury that is *proximately* caused by

10   an antitrust violation. Plaintiff's *only* theory of causation is expressly pleaded as follows:

11        "UMTS chipset manufacturers pass [Qualcomm's] UMTS Licensing costs down to
          UMTS device manufacturers, UMTS device manufacturers pass those costs down to their
12        vendors, and the vendors ultimately pass those costs on to end consumers, such as
          Plaintiff." (Compl. ¶ 70.)[3]
13

14   Plaintiff cannot and does not cite any case in which a court found antitrust standing based upon a

15   theory of injury anywhere near this remote. Indeed, in the only cited case in which the facts

16   resemble those alleged here—*In re Dynamic Random Access Memory (DRAM) Antitrust*

17   *Litigation*—the court properly found that consumers lacked antitrust standing because their

18   alleged injury was too remote. 516 F. Supp. 2d 1072, 1090-91 (N.D. Cal. 2007) (finding that

19   computer customers lacked standing to challenge conduct in the market for DRAM computer

20   memory because DRAM is merely one component in "all manner of personal electronic devices",

21   each of which "contains numerous other components, all of which collectively determine the final

22   price paid by plaintiffs").

23        Nor can Plaintiff save his claims by labeling himself an "indirect purchaser" and relying

24

25   immaterial in this case because a plaintiff cannot obtain an injunction against a threatened injury
     for which he would not be entitled to compensation if the injury actually occurred. *Cargill, Inc.*
26   *v. Monfort of Colorado, Inc.*, 479 U.S. 104, 112 (1986).
          [3] Relying on facts nowhere pleaded in the Complaint, the Opposition asserts that Qualcomm
27   is also a chipset manufacturer and, therefore, that there are really two instead of three
     intermediaries in the supply chain. (Opp. at 6 & n.9.) For the reasons discussed in Section II.B.,
28   *infra*, the existence of two rather than three intermediaries could in no way save Plaintiff's claims.

DLA PIPER US LLP
    SAN DIEGO          WEST\21479658.1
                                          -3-
                                                                              08cv0655-WQH (LSP)

1   on cases that stand for the unremarkable proposition that some such indirect purchasers may have

2   standing under the Cartwright Act or Section 16. (Opp. at 6-7, 13-14.) In each of the "indirect

3   purchaser" cases cited by Plaintiff, the defendant sold a finished, unbundled product to a single

4   middleman, which then resold it to the plaintiff at a price that allegedly included an overcharge

5   traceable to the antitrust violation. For instance, in the principal case relied upon by Plaintiff—*In*

6   *re Warfarin*—pharmaceutical customers were found to have standing to sue the manufacturer of

7   their prescription drug, even though they purchased the drug through a distributor. *See In re*

8   *Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 399 (3d Cir. 2000). The Third Circuit held that

9   the drug's consumers had antitrust standing because they purchased the exact drug that the

10  defendant manufactured—albeit through middlemen—and were therefore "the target of [the

11  defendant's] antitrust violations". *Id.* at 401. The Third Circuit described this fact pattern as the

12  "stereotypical" indirect purchaser claim. *Id.* at 399.[4]

13        Plaintiff's claim is anything but "stereotypical". Unlike each defendant in the cases cited

14  by Plaintiff, Qualcomm does not supply—even indirectly—the product that Plaintiff purchased

15  (*i.e.*, cell phones and service). Rather, according to the Complaint, Qualcomm licenses "some" of

16  the technology incorporated into a cellular chipset, which is then combined with other parts into a

17  cell phone and sold to a vendor. The finished cell phone is finally purchased by the end customer

18  at a price that is subsidized in part by the service provider. (Compl. ¶ 70.) Thus, Plaintiff's end

19  consumer "injury" must be traced through three levels of a supply chain, disaggregated from a

20  multitude of manufacturing, licensing and component costs, and then offset by the subsidy

21  provided by cellular carriers.[5] This theory is too remote to support standing.

22

23        [4] Similarly, the Cartwright Act cases cited in the Opposition (Opp. at 13-14) are all in this
    "stereotypical" indirect purchaser mold. *See In re Cipro Cases I & II*, 121 Cal. App. 4th 402, 407
24  (plaintiffs purchased drug manufactured by defendant from a distributor); *B.W.I. Custom Kitchen
    v. Owens-Illinois, Inc.*, 191 Cal. App. 3d 1341, 1345-46 (1987) (plaintiff bought glass container
    manufactured by defendant from a distributor); *Crown Oil Corp. v. Super. Ct.*, 177 Cal. App. 3d
25  604, 606 (1986) (defendant, manufacturer of coconut oil, sold coconut oil indirectly to plaintiffs).
        [5] Instead of addressing the remoteness of his injury for standing purposes, Plaintiff cites
26  several cases (Opp. at 7) that simply restate the standard for proximate cause. *See Zenith Radio
    Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969); *In re Cardizem CD Antitrust
27  Litig.*, 105 F. Supp. 2d 618, 649 (E.D. Mich. 2000). The standard found in these cases—that the
    defendant's misconduct must be the proximate or "material" cause of the plaintiff's injury—is
28  precisely why, on these allegations, Plaintiff's injury is too remote.

-4-

1  **C.  Plaintiff Has Not Suffered an Antitrust Injury.**

2  Plaintiff also cannot allege the necessary "antitrust injury" because, as an "end consumer"

3  of cell phones, he is not a consumer in any market in which an alleged antitrust violation took

4  place (*i.e.*, "markets for WCDMA technology" (Compl. ¶ 42)), or even in any market in which

5  Qualcomm sells a product.  (*See* Mem. at 14-16.)

6  Glossing over this deficiency, Plaintiff argues that the law is different for claims under

7  Section 16 and the Cartwright Act.  Plaintiff is incorrect on both counts.  *First*, even when

8  seeking equitable relief under Section 16, a customer must purchase a product in the market in

9  which he alleges a Sherman Act violation took place.  *See, e.g., Elliott Indus. Ltd. v. BP Am.*

10  *Prod. Co.*, 407 F.3d 1091, 1122-25 (10th Cir. 2005) (under Section 16, "the injured party [must]

11  be a participant in the same market as the alleged malefactors" (*citing R.C. Dick Geothermal*

12  *Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 148 (9th Cir. 1989) (en banc)).[6]  *Second*, although

13  California state courts have not confronted this question directly, Plaintiff offers no reason why

14  this Court should depart from the California federal decisions uniformly holding that consumers

15  who purchase in a market secondary to the market in which the defendant sold a product lack

16  standing under the Cartwright Act.  *See* Mem. at 15; *see also In re Napster, Inc. Copyright Litig.*,

17  354 F. Supp. 2d 1113, 1125-26 (N.D. Cal. 2005) ("[C]ourts interpreting the Cartwright Act's

18  antitrust standing requirement have consistently followed the 'market participant' rule.").[7]

19  /////

20  [6] Plaintiff cites several cases that he claims "contradict Qualcomm's characterization of the
market participant requirement" (Opp. at 9-10), but in each of those cases courts found an
21  antitrust injury *because* the plaintiff participated as a customer in the market where the defendant
sold a product.  *See Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1145 (9th Cir. 2003)
22  (subscribers to real estate listing service sued upstream provider of listings and therefore had
standing as indirect purchasers); *Lucas Auto. Eng'g v. Bridgestone/Firestone, Inc.*, 140 F.3d
23  1228, 1237 (9th Cir. 1998) (plaintiff had standing as an "active participant" in the market in
which defendant sold a product).
24  [7] None of the authorities cited by Plaintiff supports his assertion that "California courts have
refused to adopt a market participant requirement for antitrust injury and have found that the
25  Cartwright Act applies to anyone injured by the reduction of competition from a Cartwright Act
violation".  (Opp. at 11.)  Plaintiff relies principally on *Cellular Plus, Inc. v. Superior Court*, 14
26  Cal. App. 4th 1224 (1993).  But *Cellular Plus* simply holds that the Cartwright Act's broader
definition of antitrust injury was intended to repeal the *Illinois Brick* decision.  Accordingly,
27  while *Cellular Plus* recognized the Cartwright Act's express provision allowing indirect
purchasers to seek damages, it by no means held that indirect purchaser status is all that must be
28  demonstrated in order to establish antitrust standing.

1    Effectively conceding that he is not a consumer in any relevant market, Plaintiff attempts

2    to fall back on a so-called "exception to the market participant requirement", under which

3    antitrust standing can exist where a plaintiff's injuries are "inextricably intertwined with the

4    injuries of market participants". (Opp. at 9.) However, "the simple invocation of [the phrase

5    'inextricably intertwined'] . . . will not allow a plaintiff to avoid the fundamental requirement for

6    antitrust standing that he or she have suffered an injury of the type—almost exclusively suffered

7    by consumers or competitors—that the antitrust laws were intended to prevent." *Steamfitters*

8    *Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 926 n. 8 (3d Cir. 1999).

9    The narrow exception referenced by Plaintiff applies only when a person can be considered the

10   "direct victim" of a conspiracy or the "necessary means" by which the conspiracy was carried

11   out. *Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739, 744-47 (9th Cir. 1984) (*citing Blue Shield v.*

12   *McCready*, 457 U.S. 465, 479, 483-84 (1982)).[8] Here, Plaintiff does not and cannot allege that he

13   was a "direct victim" or the "necessary means" of Qualcomm's alleged conduct. To the contrary,

14   he expressly alleges that *others*—"UMTS chipset and UMTS device manufacturers"—are the

15   ones that "suffer *direct* anticompetitive harm". (Compl. ¶ 70 (emphasis added).) Because

16   Plaintiff was not injured in the same market as the alleged anticompetitive conduct, his alleged

17   injury is not an *antitrust* injury.

18       **D.       Plaintiff Lacks Standing Under the UCL.**

19       For the same reasons that Plaintiff lacks antitrust standing, he also lacks standing to

20   prosecute a claim under California's UCL. Again, Plaintiff ignores the unique remoteness of his

21   claim and instead simply relies on cases from the UCL context upholding claims that fit the

22   "stereotypical" indirect purchaser mold. *See In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d

23   1098, 1102-05 (N.D. Cal. 2007) (consumers purchased defendant's pharmaceutical through a

24   middleman); *Shersher v. Super. Ct.*, 154 Cal. App. 4th 1491, 1500 (2007) (consumers purchased

25

26       [8] The classic example was the plaintiff in *McCready*, a patient who sued her healthcare
     provider after it refused to reimburse her as part of its conspiracy to boycott certain psychologists.
     Although it was the plaintiff's employer, and not her, who was a consumer in the market for
27   health plans, the plaintiff's injury was considered "inextricably intertwined" with the conspiracy
     because it could not have been carried out without injuring her; she was thus a "necessary step in
28   effecting the ends of the alleged illegal conspiracy". 457 U.S. at 483-84.

DLA PIPER US LLP
  SAN DIEGO        WEST\21479658.1                                              08cv0655-WQH (LSP)

1    Microsoft computer equipment through a retailer).  Even those cases acknowledge that, for UCL

2    standing, "a showing of causation is *required* as to each representative plaintiff".  *Ditropan*, 529

3    F. Supp. 2d at 1105-06.  Indeed, in the UCL context, Plaintiff's "'injury in fact' must be fairly

4    traceable to the challenged conduct of the defendant, and it must be likely, as opposed to merely

5    speculative, that the injury will be redressed by a favorable decision".  *Stickrath v. Globalstar,*

6    *Inc.*, 527 F. Supp. 2d 992, 995 (N.D. Cal. 2007).  For all the reasons that Plaintiff's theory of

7    causation is too remote to support antitrust standing, it also is insufficient under the UCL.

8    **III.    THE COMPLAINT FAILS TO STATE A CLAIM.**

9          **A.    Plaintiff Does Not Allege an Actionable Conspiracy.**

10          Plaintiff makes three arguments for why his claim based on an "involuntary conspiracy"

11    should survive notwithstanding *Monsanto v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984).  None

12    of them has any merit.

13          *First*, Plaintiff argues that *Monsanto* cannot foreclose his claim under the Cartwright Act.

14    To the contrary, the Cartwright Act is expressly modeled on the Sherman Act and therefore

15    "decisions under the latter are applicable to the former".  *G.H.I.I. v. MTS, Inc.*, 147 Cal. App 3d

16    256, 265 (1983).  For this reason, Plaintiff is unable to cite any California case after *Monsanto*

17    upholding a Cartwright Act claim based on his theory of involuntary conspiracy.  (Opp. at 19-22.)

18          *Second*, each of the post-*Monsanto* federal decisions that Plaintiff claims support his

19    theory (Opp. at 20 & n.19) is inapposite.  One of the cases actually undercuts Plaintiff's theory.

20    *See City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992) (finding no coerced

21    conspiracy despite threats).  Plaintiff's other Ninth Circuit cases involve tying arrangements,[9]

22    which are recognized as a narrow exception to *Monsanto*.  *See Nat'l Assoc. of Freelance*

23    *Photographers v. Assoc. Press*, 1997 WL 759456, at *9 (S.D.N.Y. 1997) (recognizing "the

24    narrow exception whereby franchisees alleging an illegal 'tying' arrangement can satisfy the joint

25    action requirement by charging a 'conspiracy'—really 'unwilling compliance'—between

26    _____

27        [9] *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 917 (9th Cir. 2008); *Datagate, Inc.*
       *v. Hewlett-Packard Co.*, 60 F.3d 1421, 1426-27 (9th Cir. 1995) (explaining that Section 1's
       concerted action requirement "is satisfied in tie-in cases by the coerced sales contract for the tied

28    item"); *see also Black Gold, Ltd. v. Rockwool Indus., Inc.*, 732 F.2d 779, 780 (10th Cir. 1984).

1    themselves and a franchisor"); *see also Toscano v. PGA Tour, Inc.*, 70 F. Supp. 2d 1109, 1115 n.6

2    (E.D. Cal. 1999) (explaining that, because tie-ins are per se illegal, courts "'err on the side of

3    over-inclusiveness in determining the presence of an agreement'" (citing 7 Areeda &

4    Hovenkamp, *Antitrust Law* ¶ 1437)).  In the remaining cases cited by Plaintiff, *Monsanto* simply

5    was not at issue because there—unlike here—the allegedly coerced victims *knowingly* entered

6    into an unlawful conspiracy.[10]  Plaintiff makes no allegation that Qualcomm's licensees

7    knowingly conspired to restrain prices, whether voluntarily or not.  Indeed, the Complaint alleges

8    that the price restraints in fact were imposed upon *them*.  (Compl. ¶ 126 ("[Qualcomm] impose[d]

9    restraints upon otherwise uncooperative licensees.").)  This is consistent only with unilateral

10    conduct on the part of Qualcomm in deciding the terms on which it will deal with its customers—

11    conduct that cannot violate Section 1.  *See Toscano*, 70 F. Supp. 2d at 1115.

12        *Third*, recognizing the defects in his Complaint, Plaintiff asks the Court to ignore the lack

13    of "factual detail about the coercive tactics Qualcomm used", arguing that these tactics are

14    "irrelevant".  (Opp. at 20.)  They are in fact highly relevant.  After *Twombly*, references to

15    "specific time, place or person" are critical in providing notice to antitrust defendants before

16    "allowing a potentially massive factual controversy to proceed".  (Mem. at 8, 20.)  Thus, even

17    when entertaining a "coerced" conspiracy claim, courts require the plaintiff to plead "facts

18    regarding the alleged compulsion and coercion—for example, *who* coerced *whom*, *when* the

19    coercion took place, *how* the coercion was effected, and *what* comprised the conspiracy".  *Int'l

20    Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. 07-CV-00043, 2007 WL 4976364, at *9

21    (C.D. Cal. Oct. 29, 2007).  Because Plaintiff fails to allege these facts, he cannot state a claim

22    under Section 1 or the Cartwright Act.

23    ////

24        [10] *MCM Partners v. Andrews-Bartlett & Assocs.*, 62 F.3d 967, 975 (7th Cir. 1995) (coercion
only if victim knew it was "acquiescing in conduct that was in all likelihood unlawful"); *see also*
25    *Spectators' Commc'n Network Inc. v. Colonial Country Club*, 231 F.3d 1005 (5th Cir. 2000)
(combination can be found when one conspirator "is enticed or coerced into knowingly curtailing
26    competition by another conspirator who has an anticompetitive motive."); *Dickson v. Microsoft
Corp.*, 309 F.3d 193, 205 (4th Cir. 2002) (conspiracy may exist if the a coerced party "acquiesced
27    in the restraint with the knowledge that it would have anticompetitive effects"); *Fineman v.
Armstrong World Indus., Inc.*, 980 F.2d 171, 214-15 (3d Cir. 1992) ("[C]o-conspirators must
28    share a commitment to a common scheme which has an anticompetitive objective.").

DLA PIPER US LLP
SAN DIEGO

WEST\21479658.1

-8-

08cv0655-WQH (LSP)

1    **B.    Plaintiff Cannot State a Claim Under Section 2 of the Sherman Act.**

2    "It is axiomatic that a firm cannot monopolize a market in which it does not compete."

3    *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062 (2d Cir. 1996), *vac'd on other grounds*, 525

4    U.S. 128 (1998). The Complaint expressly alleges the relevant market as "cellular phones and

5    service", but Qualcomm is not alleged to supply cell phones or cellular service. This is fatal to

6    Plaintiff's claim based on Section 2. *See, e.g., Aquatherm Indus., Inc. v. Florida Power & Light*

7    *Co.*, 145 F.3d 1258, 1261 (11th Cir. 1998) (dismissing claim for monopolization of "pool-heater

8    market" because "[plaintiff] does not assert that [defendant] ever *competed* in the pool-heater

9    market"). Ignoring this basic defect, Plaintiff insists that Qualcomm has the "ability to influence"

10    the relevant market for cell phones and service. (Opp. at 22.) But Plaintiff offers no authority for

11    the proposition that mere "influence" by a non-competitor constitutes the exercise of monopoly

12    power under Section 2. Courts have squarely rejected that argument. *See, e.g., Olde Monmouth*

13    *Stock Transfer Co.  v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 393 (S.D.N.Y.

14    2007).

15    **C.    Plaintiff Cannot State a UCL Claim.**

16    Having failed to state a claim for violation of the antitrust laws, Plaintiff's UCL cause of

17    action—which is based on identical allegations—cannot survive.

18    *First*, Plaintiff cannot rescue his "unlawful" claim by reference to the Third Circuit's

19    decision in *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007). Although

20    Plaintiff has copied much of Broadcom's 2005 complaint, he critically has alleged a *different*

21    antitrust market. Broadcom's complaint defined the relevant market as "the market for

22    Qualcomm's proprietary WCDMA technology", *id.* at 315, but Plaintiff defines the relevant

23    market here as cellular "devices" and "service" (Compl. ¶¶ 68-84). Because, for all the reasons

24    discussed above, Plaintiff's allegations in this case fail to state an antitrust claim, they also fail to

25    state an "unlawful" UCL claim. *See Webcaster Alliance, Inc. v. Recording Indus. Assoc. Am.,*

26    *Inc.*, No. 03-CV-3948, 2004 WL 1465722, at *6 (N.D. Cal. April 1, 2004) (dismissing "unlawful"

27    claim based upon allegations that were insufficient to state an antitrust cause of action).

28    /////

-9-

1    *Second*, without an underlying antitrust violation, Plaintiff's claim under the "unfair"

2    prong fails for the same reason and finds no support in the *Cel-Tech* decision.[11]  Plaintiff cannot

3    state a UCL claim based upon the same allegations that fail to state an antitrust cause of action.

4    *See SC Mfr. Homes, Inc. v. Liebert*, 162 Cal. App. 4th 68, 93 (2008) ("In that plaintiff cannot

5    allege a Cartwright Act violation . . . the cause of action for a violation of the UCL also cannot

6    stand.").

7        *Third*, Plaintiff is unable to cite any case supporting his theory based on the "fraudulent"

8    prong, which requires the deception of customers as opposed to the sophisticated SSOs that

9    allegedly were deceived here.  (Mem. at 22.)  Nor does he even attempt to distinguish

10   Qualcomm's cases, which hold squarely that "sophisticated" entities like standards organizations

11   receive no protection under the UCL.  (Mem. at 22-23.)  In the one case cited by Plaintiff, it was

12   the investing "public" that allegedly had been deceived.  *Overstock.com, Inc. v. Gradient*

13   *Analytics, Inc.*, 151 Cal. App. 4th 688, 696 (2007).

14   **IV.    CONCLUSION**

15       For all the foregoing reasons and the reasons set forth in Qualcomm's opening brief,

16   Qualcomm's motion to dismiss should be granted.

17   Dated:  July 28, 2008                          DLA PIPER US LLP

18

19                                                  By /s/ William S. Boggs

20                                                     william.boggs@dlapiper.com

21                                                  CRAVATH, SWAINE & MOORE LLP
                                                    Evan R. Chesler
                                                    Peter T. Barbur
22                                                  Elizabeth L. Grayer

23                                                  Attorneys for Defendant
                                                    QUALCOMM INCORPORATED
24

25

---

26   [11] *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 n.12 (1999).
     The law in California is clear that, "[i]f the same conduct is alleged to be both an antitrust
     violation and an 'unfair' business act or practice for the same reason—because it unreasonably
27   restrains competition and harms consumers—the determination that the conduct is not an
     unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward
28   consumers". *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).

-10-

DLA PIPER US LLP
SAN DIEGO

WEST\21479658.1                                                       08cv0655-WQH (LSP)